March 6th, 1905.

————O————

## No. 3632.

### (Court of Appeal, Parish of Orleans.)

## F. A. CHARLVILLE vs. WESTERN UNION TELEGRAPH COMPANY.

Appeal from Civil District Court, Division "D."

Lapeyre, Monroe and Breazeale, for Plaintiff and Appellee.

Howe, Spencer and Cocke, for Defendant and Appellant.

1. Under Art. 1934, par. 1, of our Civil Code damages *excontracta* are, as a general rule, limited to those that may reasonably be supposed to have entered into the contemplation of the parties at the time of entering into the contract.

2. The exception to the above general rule contained in the third paragraph of above Article cannot be construed as applying to a telegraphic message by the plaintiff to a third party to pay five dollars for plaintiff's account, and, remote, speculative and problematical damages, averred to have been sustained by failure to promptly deliver such message, cannot be recovered.

ESTOPINAL, J. Plaintiff sues to recover $800.00 for damages alleged to have been sustained by him by reason of the failure of the defendant company to promptly deliver a telegram sent by him from Derry, Louisiana, to Mr. L. Caspari, at Natchitoches, Louisiana, reading as follows:

"Pay A. E. Bath five dollars for me." Signed F. A. Charlville, and dated Derry, La., December 28th, 1903.

The copy of the telegram which we find in the record shows that it was received by Caspari at Natchitoches on December 29th, 1903.

Plaintiff avers that sometime prior to sending the telegram in question, he had announced his candidacy as Police Juror from the Tenth Ward of his parish, and had made a thorough canvass in furtherance of his ambition to become a police juror; that the rules of the Parish Democratic Executive Committee of the Parish of Natchitoches had fixed the 28th day of December, 1903, as the date for closing official announcements as candidates for the office to which he aspired. and had fixed 6 o'clock p. m., of that date for candidates to pay their assessment for campaign expenses and there qualify themselves for a place on the Democratic ticket.

Candidates for police jurors were each required to pay an assessment of $5.00.

Plaintiff avers that the message herein quoted was delivered to defendant company at Derry, La., at 10 o'clock a. m., December 28th, 1903, and that it was delivered on the next day, too late to avail him as a candidate.

Petitioner goes on and in a rather speculative way, avers that he had a fair chance of election, and if elected would then have had a fair chance to become president of the Police Jury, and that his ambitions were shattered by the negligence of the defendant company.

Plaintiff avers that after having declared himself a candidate, his failure to be on the ticket, has lost him the confidence of persons who were his partisans; that he is a man of sensitive pride, and that the loss of the confidence of his neighbors has caused him mental worry and suffering; that his campaign cost him about $100.00 and that the office of Police Juror, paying $200 per annum, was lost to him.

Defendant company entered an exception of no cause of action

which was sustained below, and from which judgment plaintiff appeals.

The damages sued for in this case arising *ex contractu*, is there anything in the law excepting this case from the rule that when the debtor is guilty of neither fraud or bad faith he is only liable for such damages "as may reasonably be supposed to have entered into the contemplation of the parties at the time of the contract?" (Rev. C. C., Art. 1934, Paragraph 1).

It appears to us that the damages claimed were never contemplated and could not have been foreseen by the defendant company, who had some right to be warned, either by the telegram itself or *aliunde* of the momentous consequences to the political fortunes of the plaintiff resting on its prompt delivery.

Such damages as set up herein could hardly have been foreseen by the plaintiff, as, if such loss of prestige and prominence to say nothing of the expenses of his campaign, had been preconceived, he would hardly have waited until the very last day to have put up his petty contribution of five dollars, and to have sent that only by a telegraphic order or request on a third person.

The damages sued for in this case are too remote and seem to us so speculative and problematical that they cannot be considered by a court of justice.

If as contended by plaintiff, every possible or eventual damage can be recovered for the non-delivery of a message, then the failure to deliver a telegram sending five dollars for the purchase of medicines for lack of which the patient failed to recover, would charge the telegraph company, ignorant of the purpose for which the money was sent, with damages for the death of the deceased.

Upon what principle of law does the transmittee of such messages assume such enormous responsibility from which other parties sustaining contractual relations are exempted?

The Graham case (109th La. R., p. 1070) relied on by counsel for plaintiff comes fairly under a special exception to the general rule, quoted by the Court in the Graham case, and contained in

third paragraph of Article 1934, C. C.

In that case the message announced the mortal illness and approaching death of a son to his mother. If there be any higher religious or moral duty or greater intellectual gratification than the presence and solace and comfort during the dying hours of a son, by the mother who gave that dying one birth, we fail to appreciate it.

Moreover in that case, humanity, no less than the apparent importance of the message, would and should have sped the messenger with flying feet.

Where messages are sent which are on their face of relatively small importance, or when messages are sent in cipher, under our code, some express knowledge of their importance should be brought clearly to the notice and knowledge of the telegraph company to hold them in eventual damages.

For these reasons it is ordered, adjudged and decreed that the judgment appealed from be affirmed, plaintiff to pay costs of both courts.